# In the United States Court of Federal Claims

No. 25-127
(Filed: August 27, 2026)

* * * * * * * * * * * * * * * * * * *

**BENJAMIN WAYNE LATHAM,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * *

*Benjamin Wayne Latham*, *pro se*, of Raleigh, NC.

*Alexander Brewer*, Trial Attorney, with whom was *Katy M. Bartelma*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, both of Washington, D.C., for Defendant, and *LCDR John Corrigan*, Office of the Judge Advocate General Civil Division, Department of the Navy, of counsel.

## OPINION AND ORDER

**SOMERS**, Judge.

Benjamin Wayne Latham, proceeding *pro se*, filed suit in this Court pursuant to 10 U.S.C.§ 1201 seeking: (1) a separate disability rating for a traumatic brain injury independent from his disability rating for post-traumatic stress disorder; and (2) a modification or award of disability ratings for an eye disorder, fibromyalgia, and plantar fasciitis. As explained below, Plaintiff's claims relating to TBI and an eye disorder are time-barred, and his claims relating to fibromyalgia and plantar fasciitis are not ripe for adjudication. Therefore, the Court lacks subject matter jurisdiction over Plaintiff's claims and must grant the government's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims.

## BACKGROUND

### A. Factual Background

This case involves an extensive factual history that spans over fifteen years. For brevity, the Court recounts only the salient facts here. On June 28, 2010, Mr. Latham entered active-duty service in the United States Marine Corps ("USMC") as a Light Armored Vehicle Crewman and

Rifleman. ECF No. 11-3 at 10. Beginning in 2011, Mr. Latham experienced traumatic events in connection with his military service, including multiple head injuries. *See* ECF No. 14-1 at 4. During his deployment in 2012, Mr. Latham was hit on the head by a chain gun while conducting a training exercise on a combat vehicle. *Id.*; ECF No. 11 at 3; ECF No. 11-3 at 135, 143. As a result of this injury, he began to experience headaches, memory loss, dizziness, sleep disturbances, anxiety, and concentration issues. ECF No. 11-3 at 134–35, 143; ECF No. 14-1 at 4. Mr. Latham also experienced head injuries in September 2013 and November 2013, the earlier of which occurred in a car accident. ECF No. 11 at 3; *see* ECF No. 11-3 at 143; ECF No. 14-1 at 4. Furthermore, in June 2014, while assigned to the Wounded Warrior Regiment, Mr. Latham hit his head while at the pool. ECF No. 11 at 3; ECF No. 11-3 at 17. After this injury, in December 2014, Mr. Latham and his medical provider completed a Wounded Warrior Regiment medical questionnaire reporting, among other conditions, traumatic brain injury ("TBI"), post-traumatic stress disorder ("PTSD"), migraines, back and shoulder pain, photophobia, and problems managing pain. ECF No. 11-3 at 233–34.

In late 2013, an Abbreviated Medical Evaluation Board ("AMEB") placed Mr. Latham on limited duty and diagnosed him with, *inter alia*, TBI. *Id.* at 41. In May 2014, Mr. Latham entered the IDES process[1] claiming, among other conditions, PTSD, migraines, TBI, and

---

[1] When a service member sustains an injury or medical condition that could prevent him or her from continued service, the Department of Defense ("DoD") and the Department of Veterans Affairs ("VA") use a joint process—the Integrated Disability Evaluation System ("IDES")—to determine the service member's ability to continue serving, and, if discharged for the medical condition, what disability benefits and ratings he or she should receive. U.S. Dep't of Def., DoD Manual 1332.18, Volume 1, *Disability Evaluation System Manual: Processes* § 3.1.b (2023) [hereinafter DoDM 1332.18]; *see Keltner v. United States*, 165 Fed. Cl. 484, 489 (2023). Put succinctly, the IDES system helps determine the service member's entitlement to both military disability pay and veteran's benefits. The IDES process includes "(1) a medical evaluation, including a medical evaluation board ("MEB") review . . . ; and (2) a disability evaluation, including a physical evaluation board ("PEB") review, counseling, case management, adjudication, and a final disposition." *Keltner*, 165 Fed. Cl. at 489 (citing U.S. Dep't of Def., DoD Instruction 1332.18, *Disability Evaluation System* § 3.1.a(2)–(3) (2022) [hereinafter DoDI 1332.18]). The MEB "[r]eview[s] all available medical evidence, including examinations completed as part of DES processing, and document[s] whether the Service member has medical conditions that either singularly, collectively, or through combined effect, may prevent them from reasonably performing the duties of their office, grade, rank, or rating." *Id.* (alterations in original) (emphasis omitted) (quoting DoDI 1332.18, § 3.2.a(1)). "If the MEB determines that a service member has such condition(s), 'the MEB will refer the case to the PEB.'" *Id.* (quoting DoDI 1332.18, § 3.2.d). "The purpose of the PEB is to 'determine the fitness of Service members with medical conditions that are, either singularly, collectively, or through combined effect, potentially unfitting and, for members determined unfit, determine their eligibility for compensation.'" *Id.* (emphasis omitted) (quoting DoDI 1332.18, § 3.3.a). "There are two types of PEBs: the informal physical evaluation board ('IPEB') and the formal physical evaluation board ('FPEB')." *Id.* at 490. "The IPEB first reviews the service member's 'case file to make initial findings and recommendations without the Service member present.'" *Id.* (quoting DoDI 1332.18, § 3.3.b(1)). The service member may accept or reject the IPEB's findings; he or she

photophobia. *Id.* at 78–79, 220. The VA subsequently conducted an examination and issued a report on September 12, 2024, notably determining, *inter alia*, that Mr. Latham should be given a 70-percent disability rating for PTSD, a 30-percent disability rating for headaches, and a zero-percent disability rating for TBI. *Id.* at 80–81. As for the other medical conditions at issue here, the VA found that Mr. Latham's eye disorder (claimed as photophobia) was unrelated to his military service and thus declined to rate it. *Id.* at 82, 98. Furthermore, the VA did not address or rate fibromyalgia and plantar fasciitis. *See id.* 80–98. Mr. Latham's case then progressed to the PEB phase, and on September 23, 2014, an IPEB found Mr. Latham unfit for service and assigned him a combined disability rating of 80 percent.[2] ECF No. 14-1 at 1; *see* ECF No. 11-3 at 1. Specifically, the IPEB adopted the VA's proposed ratings as required, rating Mr. Latham's PTSD at 70 percent as "a contributory but not separately unfitting Category 2 condition" and his headaches at 30 percent.[3] ECF No. 14 at 4; *see* ECF No. 14-1 at 1, 3. The IPEB also adopted by reference the VA's finding that Mr. Latham's TBI should be rated at zero percent. *See* ECF No. 14-1 at 1, 3 (IPEB decision not including TBI as an unfitting condition and stating that "[t]he PEB incorporates the enclosed DVA Rating Decision Letter and its supporting rationale regarding the above unfitting condition(s)"); *see also* ECF No. 11-3 at 81. The IPEB recommended that Mr. Latham be placed on the Temporary Disability Retired List ("TDRL"), ECF No. 14-1 at 1; *see* ECF No. 11-3 at 1, the purpose of which was "to further observe unfit members whose disability has not stabilized and for whom the PEB cannot accurately assess the degree of severity, percent of disability, or final disposition," *Keltner*, 165 Fed. Cl. at 492 (citation omitted). On January 30, 2015, Mr. Latham was discharged from military service. ECF No. 11-3 at 238 (Certificate of Release or Discharge from Active Duty). He was first placed on

---

may "request a [FPEB] if found fit, or, if found unfit, demand a FPEB in accordance with [10 U.S.C. § 1214]." *Id.* (alterations in original) (quoting DoDI 1332.18, § 3.3.b(1)).

[2] The IPEB also found that Mr. Latham's gastroesophageal disease and right knee pain were "conditions that are not separately unfitting and do not contribute to the unfitting condition(s)." ECF No. 14-1 at 1.

[3] In the IDES process, the PEB's disability ratings generally must match the VA's proposed ratings. *See* DoDI 1332.18, § 8.1.d(3) ("[T]he PEB will apply ratings provided by the VA for unfitting conditions to establish the Service member's DoD disability rating under the IDES process."). However, the PEB may differ in its total disability rating percentage. *See Keltner*, 165 Fed. Cl. at 513 ("[U]nder the IDES, the final, total disability rating of a military service may differ from the VA's . . . ."). Here, the IPEB properly adopted the VA's proposed ratings for PTSD, headaches, and TBI. *See* ECF No. 14-1 at 1, 3; ECF No. 11-3 at 80–81. However, the IPEB did not adopt the VA's proposed ratings for, *inter alia*, Mr. Latham's scarring, bilateral shoulder condition, lower back condition, bilateral hand condition, neck condition, bilateral knee condition, bilateral ankle condition, and tinnitus. *Compare* ECF No. 14-1 at 1, *with* ECF No. 11-3 at 80–81. Nevertheless, Mr. Latham did not bring claims related to these conditions in his amended complaint, so the Court does not consider them. *See Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver.").

the TDRL but was ultimately moved to the Permanent Disability Retired List ("PDRL") effective May 1, 2018.[4] ECF No. 14-1 at 13.

**B. Procedural History**

In April 2020, Mr. Latham petitioned the Board for Correction of Naval Records ("BCNR") to have his military record corrected to reflect a 100-percent disability rating for TBI.[5] ECF No. 11-3 at 10–16 (June 2020 decision letter); *see id.* at 5–6 ("In 2020, [Mr. Latham] filed a petition with this Board seeking to have [his] PDRL record changed to reflect a 100% rating . . . ."); ECF No. 11 at 1–2, 4 ("In 2020, Plaintiff submitted [a] request to the Board for Correction of Naval Records (BCNR) seeking correction of military records to account for his TBI."). The BCNR denied Mr. Latham's request, concluding there was insufficient evidence to find that Mr. Latham's TBI symptoms were "separately unfitting" and, therefore, the IPEB correctly declined to rate his TBI condition. *See* ECF No. 11-3 at 6. In other words, the BCNR "concluded the change to [Mr. Latham's] VA assigned rating for TBI results in no change to [his] combined PEB rating." *Id.* Mr. Latham submitted petitions for reconsideration to the BCNR in 2023 and 2024, requesting a 100-percent rating for his PTSD, a 50-percent rating for his headaches, a finding that his contributory Category 2 Cognitive Disorder is separately unfitting, and that his TBI be considered separately from the IPEB's PTSD rating. ECF No. 11-3 at 1–3, 5–7. Both petitions were denied. *Id.* at 3, 7.

While seeking review of his TBI rating, Mr. Latham also sought to receive disability ratings and pay for fibromyalgia and plantar fasciitis. However, he did so exclusively through the VA and never petitioned the BCNR regarding these claims. *See* ECF No. 11 at 4 (stating that Mr. Latham's claim regarding fibromyalgia is "presented [in the present case] in the first instance"); ECF No. 11-2 at 2–3 (raising plantar fasciitis for the first time in the amended complaint). In 2018, the VA grouped Mr. Latham's fibromyalgia with his TBI and PTSD conditions and gave Mr. Latham a 100-percent disability rating for the combined conditions. *Id.* at 24, 50, 222 ("In that rating action, the AOJ reclassified the Veteran's psychiatric disorder and his TBI. More specifically, the AOJ classified the two conditions as one overlapping disorder—TBI with PTSD and unspecified depressive disorder, insomnia, chronic fatigue syndrome, and fibromyalgia."). In 2020, the Board of Veterans' Appeals ("BVA") separately assigned a 40-percent rating for fibromyalgia. *Id.* at 131. A year later, in 2021, the VA assigned Mr. Latham's

---

[4] In 2018, Mr. Latham participated in proceedings before another IPEB, which assigned him a 70-percent total disability rating—50 percent for PTSD with related Category 2 diagnosis and 30 percent for headaches—and transferred him from the TDRL to the PDRL. ECF No. 14-1 at 14, 16; ECF No. 14 at 5. The decision did not otherwise differ from the IPEB's findings in 2014. *See* ECF No. 14-1 at 1, 16. At that time, Mr. Latham accepted the 2018 IPEB's decision and formally waived his right to reconsideration and a formal hearing. *Id.* at 18–19. For the purposes of this opinion, the Court focuses primarily on the 2014 IPEB decision.

[5] Mr. Latham also pursued separation of his TBI and PTSD ratings at the VA. The Board of Veterans' Appeals ("BVA") ultimately gave Mr. Latham a 100-percent disability rating for TBI—the relief sought in Mr. Latham's petition to the BCNR in 2020. *See* ECF No. 34 at 2, 5.

plantar fasciitis a 30-percent rating on remand from the 2020 BVA decision. ECF No. 11-4 at 8. Regarding Mr. Latham's claim for an eye disorder (specifically photophobia), while the BCNR mentions it in its 2024 decision, it is unclear whether Mr. Latham ever petitioned the BCNR for reconsideration of this condition, and the decision fails to address it as a separate claim. ECF No. 11-3 at 7. However, Mr. Latham did seek review of this condition from the VA. In 2015, the VA determined that Mr. Latham's eye disorder was not service-connected. ECF No. 11-3 at 98. But in a 2019 decision, the VA found Mr. Latham's eye disorder (photophobia) to be service-connected and related to his TBI condition; consequently, the VA assigned it a 30-percent disability rating. *Id.* at 239, 241–42, 245.

Subsequently, Mr. Latham filed suit in this Court in January 2025, seeking entitlement to separate disability evaluations for the residuals of TBI and PTSD. *See* ECF No. 1; *see also* ECF No. 11 at 10 (amended complaint). Mr. Latham also seeks disability retirement benefits for his eye disorder, fibromyalgia, and plantar fasciitis. *See* ECF No. 1 at 10; ECF No. 11-2 at 2–3. He contends that these claims were not—but should have been—evaluated by the IPEB during the IDES process. ECF No. 11 at 4.

Before the Court is the government's motion to dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* ECF No. 14. In addition to responding to the government's motion to dismiss, Mr. Latham simultaneously moved for judgment on the administrative record. ECF No. 15. The government moved to suspend briefing on Mr. Latham's motion "until after the Court resolves the defendant's pending motion to dismiss," ECF No. 16 at 1, which the Court granted, *see* ECF No. 20. The government's motion to dismiss is now ripe for adjudication.

## DISCUSSION

### A. Legal Standard

"[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (omission in original) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). This Court's authority to grant relief in a case is governed by the scope of the United States' waiver of sovereign immunity under the Tucker Act. *See* 28 U.S.C. § 1491; *Testan*, 424 U.S. at 399 (quoting *Sherwood*, 312 U.S. at 587–88). Relevant to the instant case, even if a plaintiff presents an otherwise cognizable claim, the Tucker Act bars any claim that is not "filed within six years after such claim first accrues." 28 U.S.C. § 2501. "This statute of limitations is an express limitation on the Tucker Act's waiver of sovereign immunity," *Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990) (citing *Soriano v. United States*, 352 U.S. 270, 273–74 (1957)), and is an absolute, "jurisdictional" bar, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). Put simply, the statute of limitations restricts this Court's subject matter jurisdiction. *Chisolm v. United States*, 82 Fed. Cl. 185, 192 (2008) ("[A] motion to dismiss a matter from our court due to the expiration of the statute of limitations period concerns a lack of subject matter jurisdiction and is thus properly brought under RCFC 12(b)(1).").

The same is true of the constitutional limitation that only permits courts to hear justiciable controversies. *See, e.g.*, *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990) ("A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" (quoting *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988))). A claim is justiciable only if, among other requirements, "the issues presented are ripe for judicial review." *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008) (citing *Abbott Lab'ys v. Gardner,* 387 U.S. 136, 149 (1967)); *see also Goodwill Indus. of S. Fla., Inc. v. United States*, 156 Fed. Cl. 661, 673 (2021) ("Ripeness is a doctrine of justiciability that concerns the readiness of an issue for judicial review."); *State v. United States*, 134 Fed. Cl. 8, 17 (2017) (same). Ripeness is a threshold jurisdictional question. *See Itility, LLC v. United States*, 124 Fed. Cl. 452, 456 (2015) (treating the government's ripeness challenge as a "threshold question" that must first be answered before the Court may "consider[] the merits of a claim under 28 U.S.C. § 1491(b)(1)"); *Benchmark Res. Corp. v. United States*, 74 Fed. Cl. 458, 463 (2006) ("In holding a claim to be unripe, the court essentially is refusing to exercise jurisdiction over the case.").

Regarding both staleness and ripeness, while a *pro se* plaintiff is held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements," *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007). Accordingly, a *pro se* plaintiff still "bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). And under RCFC 12(b)(1), the Court must dismiss any claim that does not fall within its subject matter jurisdiction.

In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all factual allegations made by the non-moving party and draw all logical inferences in the light most favorable to that party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Rogers v. United States*, 95 Fed. Cl. 513, 515 (2010) ("When determining jurisdiction, the Court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor." (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995))). However, although "[i]n deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint[] and construes them in the light most favorable to the plaintiff," *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014), the Court does not give the plaintiff such deference for controverted facts relevant to subject matter jurisdiction. Rather, in such situations,

> [t]he government's factual challenge to the court's jurisdiction place[s] the burden on [the plaintiff] to demonstrate facts sufficient to support its contention regarding the court's jurisdiction. Once challenged, allegations alone are insufficient to meet the complainant's burden. Thus, [the Court] must scrutinize the evidence submitted by [the plaintiff] as support for its otherwise naked jurisdictional allegations in order to determine whether [the] case is indeed ripe for adjudication.

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (citations omitted); *see also Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (agreeing with the government's contention that "once the district court's subject matter jurisdiction was put in question it was incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction . . . by a preponderance of the evidence"); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) ("When . . . a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence."). In other words, "the court usually assumes all factual allegations in the complaint are true and draws all reasonable inferences in the plaintiffs' favor," but "a plaintiff cannot rely solely upon allegations in the complaint if the defendant or the court questions jurisdiction." *Fairholme Funds, Inc. v. United States*, 114 Fed. Cl. 718, 720 (2014). "Instead, the plaintiff must bring forth relevant, adequate proof to establish jurisdiction," and "[t]he court may examine relevant evidence in order to decide any [such] factual disputes." *Id.*

## B. Analysis

The government's motion to dismiss presents the Court with three questions: (1) whether Mr. Latham's military pay claim for a 100-percent disability rating for TBI was filed within the relevant statute of limitations; (2) whether Mr. Latham's claim for benefits related to his eye disorder was filed within the relevant statute of limitations; and (3) whether Mr. Latham's benefits claims for fibromyalgia and plantar fasciitis are ripe for adjudication. As explained below, each of Mr. Latham's claims falls outside this Court's jurisdiction for either staleness or ripeness. The Court addresses each of Mr. Latham's claims in turn, beginning with his TBI claim, which appears to be Mr. Latham's primary claim in this action.

### 1. Plaintiff's claim requesting the separation of his TBI rating from his PTSD rating is time-barred.

In its motion to dismiss, the government argues that Mr. Latham's claim to disability benefits for TBI is stale for three reasons: (1) Mr. Latham filed suit more than six years after his claim accrued; (2) the accrual suspension rule does not apply; and (3) Mr. Latham's alleged legal disability does not toll the limitations period. ECF No. 14 at 9, 13, 16. First, the government argues that Mr. Latham's claim accrued when the IPEB "adjudicated his entitlement to disability retirement pay and determined that Mr. Latham should be medically retired" in 2014 and "in January 2015, Mr. Latham was discharged with the disability retirement determination and pay the PEB had adjudicated." *Id.* at 10–11. According to the government, because Mr. Latham knew of his disability at discharge, "Mr. Latham's claim for disability retirement pay accrued at that time, and, consequently, is barred by the six-year statute of limitations because he did not sue in this Court until January 2025, ten years later." *Id.* at 11. In other words, the government asserts that "[a]t the time of his discharge, the 2014 PEB had already adjudicated Mr. Latham's entitlement to a disability based on PTSD and headaches, and its corresponding refusal to adjudicate any other condition as unfitting was sufficiently final to trigger the limitations period to begin to run upon his discharge." *Id.* (citing *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005)).

Second, the government contends that the accrual suspension rule does not apply to Mr. Latham's case, because (1) "Mr. Latham's allegations and attachments[] make clear that he was aware of the seriousness of his health conditions and that he was under consideration for retirement due to medical disability," *id.* at 14; and (2) "there is no basis to find the Government concealed his condition or any Government action taken with respect to his condition . . . [or] that later decisions by the VA mean his claim was unknowable or concealed until those VA decisions were rendered," *id.* at 15. Finally, the government alleges that Mr. Latham has not shown a cognizable legal disability tolling the limitations period because he "has failed to allege or support that his conditions have prevented him from understanding his rights to military disability retirement pay, the necessity of vindicating his rights, or protecting his rights by filing suit at the time his claim accrued." *Id.* at 17 (citing *Goewey v. United States*, 612 F.2d 539, 545 (Ct. Cl. 1979)).

In his amended complaint and response to the government's motion, Mr. Latham argues that his TBI claim is not time-barred for several reasons. First, Mr. Latham alleges that his "claim for TBI disability retirement benefits did not accrue until the BCNR issued a final decision regarding his TBI claim in September 2020, constituting the final military board action necessary for accrual." ECF No. 11-2 at 2 (citing *Friedman v. United States*, 159 Ct. Cl. 1 (1962)). Specifically, he contends that his TBI claim did not accrue at discharge based on the 2014 IPEB decision because "the PEB never took TBI into consideration," and thus did not adjudicate his TBI claim. ECF No. 15 at 8–11; *see* ECF No. 11-2 at 3 ("Plaintiff's TBI was not properly considered in the [MEB] and [PEB] processes . . . ."). Therefore, Mr. Latham challenges the BCNR's 2020 decision, which he argues is the triggering event under the statute of limitations. ECF No. 11 at 5–9.

Second, Mr. Latham claims that the statute of limitations should be suspended because his TBI diagnosis was unknowable to him until 2020. ECF No. 15 at 13 ("[A]t the time of [Mr. Latham's] discharge in January 2015 it was 'inherently unknowable' that his head injury events were permanent disabilities [and] would render him disabled by 2020."). This is because the military allegedly "misled" Mr. Latham as to his TBI diagnosis.[6] *Id.* at 14 ("Mr. Latham was misled to believe that the treatment he had received for overlapping and comorbid effects of TBI/head injuries, were resolved or given the prevailing and complete medical finding by the PEB that rather PTSD was causing such symptoms and functional impairment, when the PEB did not evaluate the later Tbi and Mr. Latham being a layman and non-medical expert is not expected to know the diagnosis or complete nexus of his symptom's or their cause, just that he has them, and the military hiding those facts or keeping them shrouded and undisclosed by omitting records and refusing to have the TDRL review or order new medical testing and imaging . . . is prejudicial."); ECF No. 11-2 at 5 ("[T]he government's failure to provide full

---

[6] Plaintiff provides a 2025 BVA decision in which the BVA states that its prior 2024 determination remanding Mr. Latham's veterans benefits appeal "was based on an incomplete file (missing medical records)." ECF No. 34 at 4. Because of the missing records, Mr. Latham argues that his TBI claim accrued with the 2020 BCNR decision, which was allegedly the "first competent board" to review the TBI rating. ECF No. 15 at 10. However, the statement that the decision was based on missing records refers to the original BVA decision, not the IPEB's decision.

disclosure regarding his unfitting conditions tolled the statute of limitations under the accrual suspension doctrine[.]"); *see also* ECF No. 11 at 4 ("Plaintiff could not reasonably have discovered Defendant[']s omissions until VA provided the necessary diagnoses, ratings, and service connection for Va claims process started during active duty . . . ."). Finally, Mr. Latham argues that the statute of limitations should be tolled because he was allegedly "mentally incompetent at the time of discharge and for years thereafter." ECF No. 11-2 at 2 (citing *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003); *Young v. United States*, 529 F.3d 1380 (Fed. Cir. 2008)).

After reviewing Mr. Latham's amended complaint, the attachments thereto, and the "documents incorporated into the complaint by reference," *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the Court finds that Mr. Latham's TBI claim is time-barred because (1) Mr. Latham's TBI and PTSD ratings were combined and considered together in the 2014 IPEB decision, which relied on the VA determination as part of the IDES process; and (2) Mr. Latham does not plausibly allege facts that would sufficiently suspend or equitably toll the statute of limitations for his TBI claim, nor did he prove that the statute of limitations should be suspended or tolled after the jurisdictional facts regarding timeliness were called into question by the government. The Court addresses each of these points in turn.

**a. Plaintiff's TBI claim was considered by a competent military board in 2014.**

As stated earlier, 28 U.S.C. § 2501 prescribes a six-year statute of limitations between the accrual of a claim and the time the claim must be filed in this Court. Generally, a claim accrues, and the statute of limitations begins to run, "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988). Liability is fixed when governmental action results in harm to a plaintiff that provides a basis for bringing suit. *Martinez*, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit . . . ."). For claims regarding military disability benefits, the claim accrues when the first competent military board with authority to grant disability benefits denies or refuses to hear the claim:

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. *If at the time of discharge an appropriate board . . . heard the service member's claim but denied it, the limitations period begins to run upon discharge*. A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board. However, where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision.

*Jones v. United States*, 30 F.4th 1094, 1100–01 (Fed. Cir. 2022) (emphasis added) (quoting *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990)).

The Federal Circuit has held that a PEB, including an IPEB, is an "appropriate board to make a final disability determination, and its decision is adequate to trigger the running of the statute of limitations." *Id.* at 1101 (citing *Chambers*, 417 F.3d at 1224–25 & n.2); *Johnson v. United States*, 173 Fed. Cl. 77, 83 (2024) ("Formal and informal PEBs are both statutorily authorized military boards whose decisions are 'sufficient to trigger the running of the six-year limitations period.'" (citation omitted)); *Schmidt v. United States*, 89 Fed. Cl. 111, 120 (2009) ("An 'informal' [PEB] decision is sufficient to start the running of the statute of limitations."). Put differently, if a service member receives consideration from a PEB or an IPEB, the long-established first competent board rule applies. *See, e.g.*, *Pearson v. United States*, 139 Fed. Cl. 427, 437–38 (2018) (finding that the PEB decision placing a service member on TDRL was the first statutorily authorized board to hear the claim); *Sabree v. United States*, 90 Fed. Cl. 683, 695 (2009) (finding that the PEB decision prior to discharge, not the later corrections board proceeding, was the first competent board that started the limitations period); *Lockwood v. United States*, 90 Fed. Cl. 210, 217, 219–20 (2008) (finding that the service member's claim accrued upon the PEB decision triggering discharge, not when the servicemember first learned of his disabling condition only years later due to the lack of evidence at the time of his PEB).

Here, the Court finds that the statute of limitations was triggered when the IPEB adjudicated Mr. Latham's entitlement to disability retirement pay and began to run upon his discharge in 2015. *See Real*, 906 F.2d at 1560 ("If at the time of discharge an appropriate board . . . heard the service member's claim but denied it, the limitations period begins to run upon discharge."). This is because the IPEB, as the first competent military board with authority to grant disability benefits, considered and denied (as a separate condition) Mr. Latham's TBI claim because a disability rating was already given for PTSD.[7]

---

[7] The Court notes that Mr. Latham does not provide records or otherwise allege that he waived his appeal to receive a formal PEB after the IPEB issued its rating determinations in 2014, and neither party makes this argument. *See Jones*, 30 F.4th at 1101 n.4 ("A decision by an informal PEB can start the running of the statute of limitations when a plaintiff waives his or her appeal to a formal PEB."). Accordingly, the Court determines that the statute of limitations accrued upon discharge under the presumption of regularity. *See Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("The 'presumption of regularity' supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties. The doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary." (citations omitted)). In the military disability process, if a service member does not waive his or her right to a formal PEB, he will not be discharged based on the IPEB; rather, the Board will hold a hearing on the case. *Kaster v. United States*, 149 Fed. Cl. 670, 673 (2020) ("A claimant is given fifteen days after he receives notification of the IPEB's preliminary findings to either accept those findings or request reconsideration from the IPEB 'and/or demand/request a personal appearance before a formal PEB.' If the member accepts the findings of the IPEB, the case is finalized and the service's headquarters will separate, retire, or return the disability

As part of the IDES process, the VA determined that Mr. Latham was entitled to a zero-percent disability rating for TBI—not because Mr. Latham did not have TBI, but rather because Mr. Latham's TBI symptoms were subsumed by his PTSD: "Per VA regulation Symptoms associated with post-traumatic stress disorder (PTSD) may overlap with symptoms of Traumatic brain injury." ECF No. 11-3 at 86; *see also id.* at 80–81 (rating "posttraumatic stress disorder (PTSD), also diagnosed as unspecified depressive disorder, (claimed as depression, insomnia & PTSD)" at 70 percent, and rating "traumatic brain injury, (claimed as TBI)" at zero percent). Shortly thereafter, the IPEB adopted the VA's proposed ratings: "The PEB incorporates the enclosed DVA Rating Decision Letter and its supporting rationale regarding the above unfitting condition(s)." ECF No. 14-1 at 3. Like the VA, the IPEB gave Mr. Latham a 70-percent disability rating for PTSD, and, like the VA, did not separately rate TBI due to its zero-percent VA rating. *Id.* at 1, 3. In short, the IPEB considered Mr. Latham's TBI condition, but it was joined with the PTSD rating rather than receiving a separate rating. *Id.*; *see, e.g.*, ECF No. 11-3 at 86 ("[TBI] symptoms which overlap or are specifically associated with a mental disorder would be evaluated under the appropriate mental disorder diagnostic code."). Therefore, the 2014 IPEB—not the 2020 BCNR—was the first board to consider Mr. Latham's eligibility for disability related to TBI.

This is consistent with how the IDES process is supposed to work. As Chief Judge Solomson discussed in detail in *Keltner*:

> For service members proceeding through the IDES process, DoD requires the military services to apply the VA's disability rating. *See* DoDI 1332.18, § 8.1.d(3) ("[T]he PEB will apply ratings provided by the VA for unfitting conditions to establish the Service member's DoD disability rating under the IDES process."); [D]AFI 36-3212, ¶ 1.10.1 ("The PEB assigns the disability rating percentage(s) provided by the Department of Veterans Affairs Rating Agency Site for unfitting medical conditions of service members in the IDES[.]"). . . . Indeed, that is the entire point of the IDES: the VA performs the medical exam and decides the rating, and the military decides whether the disability renders the service member unfit. [DoDM 1332.18, § 10.4 ("TDRL Reevaluation")]; *see also Kaster*, 158 Fed. Cl. at 90 n.2 ("[T]he [IDES] [is] a joint medical evaluation process which combines the disability examinations performed by DoD and the VA and requires the DoD to apply the VA's disability rating determinations for all conditions the Navy determines to be unfitting."). . . . [Although] under the IDES, the final, total disability rating of a military service may differ from the VA's, [it is] not because the military issues its own rating in lieu of the VA's rating, but rather because the military only compensates members for those disabilities which render the member "unfit for further military service."

---

claimant to duty accordingly. . . . Where a service member invokes his right to a formal PEB, the board will hold a hearing during which the claimant may submit evidence and call witnesses." (citations omitted)). In other words, the presumption of regularity supports the conclusion that since Mr. Latham was discharged and placed on the TDLR based on the 2014 IPEB's findings, he accepted those findings and waived his right to a formal PEB.

165 Fed. Cl. at 492, 512–13 (footnotes omitted). Moreover, even if the Navy had not combined Mr. Latham's PTSD and TBI as the VA did, the statute of limitations would nonetheless have begun to run upon discharge, when the VA rated Mr. Latham's TBI at zero percent as part of the IDES process, and the Navy, as required, adopted that rating without modification.

Accordingly, if Mr. Latham wanted his military records to reflect that his TBI and PTSD were separately unfitting conditions—or simply to assign his TBI a rating above zero percent—he had six years from the date of his discharge to seek that correction in this Court. However, instead of filing within this period, he took ten years to file his claim. *See generally* ECF No. 1. But this was not because Mr. Latham was unaware of this claim. Rather, it was because Mr. Latham continually sought separation of his TBI and PTSD ratings through different avenues. *See, e.g.*, ECF No. 11-3 at 10–16 (2020 BCNR decision denying Mr. Latham's TBI claim); *id.* at 1–3 (January 2024 BCNR decision denying reconsideration of Mr. Latham's TBI claim); *id.* at 5–7 (December 2024 BCNR decision denying reconsideration of Mr. Latham's TBI claim); ECF No. 34 at 1 (a decision from the Board of Veterans' Appeals filed on the docket in this case in which Mr. Lathan sought "[e]ntitlement to separate disability evaluations for the residuals of traumatic brain injury (TBI) and posttraumatic stress disorder (PTSD)"); *id.* at 2–4 (listing claims that Mr. Latham filed with the VA related to this exact issue going back as far as 2015). All the while, the statute of limitations clock was ticking on Mr. Latham's right to sue in this Court because, at the time of Mr. Latham's discharge, the IPEB, applying the VA's disability evaluation, had denied his claim that his TBI was a separately unfitting disability. Mr. Latham was discharged on January 31, 2015; therefore, his time ran out on January 31, 2021—almost four years before he filed suit in this Court. For these reasons, the Court does not have jurisdiction over Mr. Latham's claim to separate his TBI rating from the PTSD rating and must grant the government's motion to dismiss Mr. Latham's TBI claim.

**b. Mr. Latham does not plausibly allege facts nor prove jurisdictional facts that would sufficiently suspend or equitably toll the statute of limitations for his TBI claim.**

In his amended complaint, Mr. Latham alleges that he "was mentally incompetent at the time of discharge and for years thereafter, requiring his wife, Patricia Latham, to serve as his fiduciary and manage all claims, appeals, and legal matters on his behalf." ECF No. 11-2 at 2. Plaintiff claims elsewhere in his filings that he did not become "competent until 2019," ECF No. 31 at 9; that he "was found competent, as conceded as early as May 2019 to seek 'first board review' at BCNR," *id.*; and that he "was no longer mentally incapable" when he "petitioned the BCNR" in April 2020, ECF No. 15 at 9. In short, Mr. Latham contends that he was mentally incompetent at the time of his discharge through as late as April 2020, and, therefore, the statute of limitations does not bar the present action. There are at least three problems with Mr. Latham's argument.

First, the statute of limitations applicable here provides that "the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." 28 U.S.C. § 2501. In other words, even assuming that Mr. Latham was mentally incompetent at the time of discharge (an issue the Court will discuss below), this disability would only extend the statute of limitations, at the latest, until sometime in April

2023—three years after Mr. Latham concedes his mental incompetency ended. Therefore, his complaint, which was filed in January 2025, was untimely even under Mr. Latham's assertion that he was mentally incompetent at the time of discharge through as late as April 2020.

Second, even assuming that his claimed mental incompetency aided his argument as to why his TBI claim is not stale (it does not), to survive a motion to dismiss by claiming a "legal disability," a plaintiff must plausibly allege that his condition rendered him "incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities" or precluded him "from comprehending rights which he would be otherwise bound to understand." *Goewey*, 612 F.2d at 544–45; *see also Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Moreover, a plaintiff must also plausibly allege that (1) "his disability existed at the time when the claim accrued," and (2) "he suffered from the disability continually during the period in which the statute is to be tolled." *Ware v. United States*, 57 Fed. Cl. 782, 788 (2003). However, Mr. Latham fails to plausibly allege any of these facts.

Rather, as noted above, Mr. Latham merely alleges that he was "was mentally incompetent at the time of discharge and for years thereafter, requiring his wife, Patricia Latham, to serve as his fiduciary and manage all claims, appeals, and legal matters on his behalf." ECF No. 11-2 at 2. But this allegation is a legal conclusion that the Court is "not bound to accept as true," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and the Court cannot otherwise identify well-pled factual allegations supporting that Mr. Latham was "incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities" at the time of his discharge in 2015, *Goewey*, 612 F.2d at 544. To illustrate, Mr. Latham merely alleges that he "was mentally incompetent at the time of discharge and for years thereafter." ECF No. 11-2 at 2. This allegation, however, is supported only by Mrs. Latham's "Certificate of Completion" of the VA National Veteran Caregiver Training Program on March 23, 2015, ECF No. 11-3 at 148, and Mr. Latham does not otherwise show that Mrs. Latham's completion of this program demonstrates that Mr. Latham was mentally incompetent.[8] What is more, the government has called the jurisdictional facts supporting Mr. Latham's claimed incompetency into question. ECF No. 14 at 16–18. Thus, even if the facts supporting his incompetence were plausibly alleged, the Court would not need to take those facts as true because once jurisdictional facts are "put in question[,] it [is] incumbent upon [Plaintiff] to come forward with evidence establishing the court's jurisdiction . . . by a preponderance of the evidence," which Mr. Latham failed to do. *Reynolds*, 846 F.2d at 748.

Finally, the closest Mr. Latham comes to establishing a legal incompetency is for the period between March 30, 2018, and March 30, 2019, when his wife was designated as his power of attorney at least for some purposes. According to Mr. Latham, the Marine Corps Traumatic Servicemembers' Group Life Insurance (TSGLI) "ordered Mr. Latham to appoint" Mrs. Latham as his fiduciary for a year, from March 30, 2018, through March 30, 2019—over three years after his discharge. ECF No. 15 at 6; ECF No. 11-3 at 209 (executing a special power of attorney

[8] As discussed below, Mr. Latham does provide more support for a one-year period of incompetence years after his discharge during which his wife served as his fiduciary.

designating Mrs. Latham as Mr. Latham's attorney-in-fact for military personnel financial matters from March 30, 2018, to March 30, 2019); *see also id.* at 205–06 (executing a general power of attorney designating Mrs. Latham as Mr. Latham's attorney-in-fact from March 30, 2018, to January 1, 2019). However, even assuming that Mr. Latham was legally incompetent during this period of time, tolling the statute of limitations for this period would not render his TBI claim timely. At most, his alleged incompetency would extend the statute of limitations by one year—from January 31, 2021, to January 31, 2022. But because about ten years elapsed between Mr. Latham's separation from service and the filing of this action, subtracting one year from that period (or even two years if the Court reads this period as extending to April 2020, as the outer limits of Mr. Latham's arguments might support) still leaves Mr. Latham's claim outside the six-year statute of limitations. Put differently, because equitable tolling pauses, but does not restart, the limitations clock, for Mr. Latham's argument on this point to succeed, he would need to have plausibly alleged five years of mental incompetence, which he fails to do anywhere in his pleadings. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."). In short, Mr. Latham's equitable tolling argument does not save him from the Tucker Act's six-year statute of limitations.

### 2. Plaintiff's claims to disability benefits related to other injuries do not fall within this Court's jurisdiction.

The Court next turns to the government's argument in its motion to dismiss that Mr. Latham's claims to disability benefits for an eye disorder, fibromyalgia, and plantar fasciitis do not fall within the Court's jurisdiction because these injuries were never adjudicated by an authorized military board. ECF No. 14 at 19 ("Mr. Latham explicitly acknowledges that he presents claims based on his fibromyalgia, photophobia, and plantar fasciitis here in the first instance." (citing ECF No. 11 at 4; ECF No. 11-2 at 2–3)); *id.* at 20 ("[B]ecause Mr. Latham did not seek relief before the BCNR on these bases, to the extent they were not before the PEB at the time of his discharge, there is no competent board decision from the relevant military department.").

In response to the government's argument, Mr. Latham makes various assertions that his claims are properly before the Court. First, he argues that the PEB proceedings "improperly" failed to consider his eye disorder, fibromyalgia, and plantar fasciitis. ECF No. 11-2 at 3 ("[G]iven the service record was replete with injuries, symptoms, and unfitness due to such conditions, [] the MEB/PEB focused on PTSD and Migraines in its evaluations improperly under the statu[t]e."); *id.* at 4 ("The PEB failed to evaluate his TBI and other unfitting conditions, including plantar fasciitis, (TBI, Fibromyalgia, eye disorders-as mentioned in the principal complaint) which was documented in symptoms of a May 2014 VA Form 21-0819 and the final physical from service as well as treatment records and incident reports as well as being deployed to covered Southeast Asia zone known for causing 'gulf war' MUCMI conditions such as Fibromy[al]gia and is presumed service connected."). Second, Mr. Latham contends that he "could not reasonably have discovered" that the PEB did not rate his eye disorder, fibromyalgia, and plantar fasciitis until the VA "provided the necessary diagnoses, ratings, and service connection for [his] Va claims process [which] started during active duty and/or while [he was

placed on the] TDRL for fibromyalgia and eye disorders." ECF No. 11 at 4. Furthermore, Mr. Latham asserts that "the government's failure to properly evaluate Plaintiff's eye and fibromyalgia conditions [was] not distinguished during MEB proceedings, so initial BCNR consideration is not necessary." *Id.* Therefore, according to Mr. Latham, "[a]lthough Fibromyalgia and eye Conditions could be brought to BCNR first, because defendant made no promise for Board consideration of those [u]nlike the [TBI], if plaintiff waits too long awaiting BCNR response, he would miss the statute of limitations of the Tucker Act." *Id.* Accordingly, Mr. Latham argues that the statute of limitations on these claims did not begin to run at his discharge, as the PEB "never addressed [them] whatsoever" and the BCNR "dismissed" them as "refused." ECF No. 15 at 3.

After reviewing Plaintiff's amended complaint, its attachments, and integral documentation incorporated into the amended complaint by reference, the Court finds that (1) Mr. Latham's claim related to his eye disorder is time-barred and (2) his claims related to fibromyalgia and plantar fasciitis are not ripe because a competent board has not considered them. The Court addresses each in turn.

**a. Plaintiff's claim to disability benefits for an eye disorder is time-barred.**

As stated earlier, "claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers*, 417 F.3d at 1224. Because the appropriate military board evaluated Mr. Latham's claim to military pay for an eye disorder (also claimed as photophobia) over six years ago, this eye disorder claim is stale. As explained above, the VA found that Mr. Latham's eye disorder was not service-related and thus did not warrant a disability rating. ECF No. 11-3 at 82, 98. As a result, the 2014 IPEB, adopting the VA's findings, also did not give Plaintiff a rating for this injury, thus rejecting any disability claim related to it. *See* ECF No. 14-1 at 1, 3. Therefore, for the same reasons discussed above regarding Plaintiff's TBI claim, Mr. Latham's eye disorder claim accrued upon discharge in 2015 because it was indeed heard by an appropriate military board. Accordingly, the statute of limitations on this claim ran well before Plaintiff filed suit in 2025. *See Jones*, 30 F.4th at 1100–01. Furthermore, as with his TBI claim, Mr. Latham's attempts to suspend accrual of his claim or toll the statute of limitations because of incompetency are insufficient to save this claim from the statute of limitations bar. *See supra* pp. 12–14. In short, for the same reasons his TBI claim fails, the Court lacks jurisdiction over Mr. Latham's eye disorder claim and must grant the government's motion to dismiss it.

**b. Plaintiff's claims to disability benefits for fibromyalgia and plantar fasciitis are not ripe.**

To reiterate, in military pay cases before this Court, a service member's claims are generally ripe only if "the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers*, 417 F.3d at 1224; *Friedman*, 159 Ct. Cl. at 13 ("Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act."); *Furlong v. United States*, 138 Ct. Cl.

843, 846 (1957) ("[This court] cannot acquire jurisdiction of such a claim until after the board and the Secretary have acted, or failed or refused to act, and not then unless the board and the Secretary acted arbitrarily or capriciously or contrary to law . . . ."). Although the Court can decide other discharge-related issues in the first instance, *see Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[This court] ha[s] previously held that a service member need not seek relief from a military corrections board before suing in the Court of Federal Claims [for unlawful discharge under 37 U.S.C. § 204]."), it cannot adjudicate disability claims as a matter of first impression, *Jimenez v. United States*, 179 Fed. Cl. 631, 641 (2026) ("By contrast, under 10 U.S.C. § 1202, former service members must exhaust administrative remedies before suing under the Tucker Act . . . ."). In short, "the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance," *Chambers*, 417 F.3d at 1225; *see Wollman v. United States*, 108 Fed. Cl. 656, 670 (2013) ("The Court of Federal Claims acquires jurisdiction over claims for military disability retirement after an appropriate military board has evaluated the service member's entitlement to such retirement in the first instance."), as they are not ripe until such consideration occurs, *see Scarseth v. United States*, 52 Fed. Cl. 458, 480 (2002) ("[Plaintiff] has not had his disability claim considered by the 'first competent board,' and, therefore, does not have a disability claim ripe for judicial review in this court.").

Because Mr. Latham's fibromyalgia and plantar fasciitis claims were never heard by an authorized military board, such as a PEB or the BCNR, they are not ripe for adjudication here. As stated earlier, because the 2014 IPEB was the first board in the IDES process that determined Mr. Latham's disability ratings, it is the first competent board decision from which any of his military disability claims—including these—could accrue. *See Pearson*, 139 Fed. Cl. at 437–38; *Sabree*, 90 Fed. Cl. at 694–95; *Lockwood*, 90 Fed. Cl. at 217, 219. However, unlike his TBI and eye disorder claims, the 2014 IPEB did not assign disability ratings for fibromyalgia or plantar fasciitis, ECF No. 14-1 at 1–3; ECF No. 11-3 at 43, and neither did the 2018 IPEB, ECF No. 14-1 at 16, because his VA evaluation does not address either fibromyalgia or plantar fasciitis to begin with, ECF No. 11-3 at 80–98. Therefore, these claims have not accrued and are thus not ripe for review. Accordingly, the Court cannot exercise jurisdiction over these claims and must dismiss them.

## CONCLUSION

For the foregoing reasons, while the Court is sympathetic to Plaintiff's position, the Court must find that Plaintiff's claims to military disability pay for TBI and an eye disorder fall outside of the Tucker Act's six-year statute of limitations. Furthermore, Plaintiff's claims to disability pay for fibromyalgia and plantar fasciitis are not ripe for adjudication. Therefore, the Court lacks subject matter jurisdiction over Plaintiff's claims and must dismiss them. Accordingly, the Court **GRANTS** the government's motion to dismiss Plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge